Citation Nr: 1730422 
Decision Date: 07/31/17 Archive Date: 08/04/17

DOCKET NO. 07-19 676 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs (VA) Regional Office in Philadelphia, Pennsylvania


THE ISSUES

1. Entitlement to a rating in excess of 20 percent for degenerative disc space narrowing, lumbar spine, prior to September 21, 2015.

2. Entitlement to a rating in excess of 40 percent for degenerative disc space narrowing, lumbar spine from September 21, 2015.

3. Entitlement to an initial rating in excess of 10 percent for lumbar radiculopathy, left lower extremity, prior to September 21, 2015.

4. Entitlement to an initial rating in excess of 20 percent for lumbar radiculopathy, left lower extremity, from September 21, 2015.

5. Entitlement to an intial rating in excess of 10 percent for lumbar radiculopathy, right lower extremity.


REPRESENTATION

Appellant represented by: The American Legion


ATTORNEY FOR THE BOARD

Suzie Gaston, Counsel

INTRODUCTION

The Veteran had active duty service from September 1999 to September 2003. 

This matter comes before the Board of Veterans' Appeals (hereinafter Board) on appeal from an October 2006 rating decision by the Buffalo, New York, Regional Office (RO). By a rating action in October 2006, the RO increased the rating for the Veteran's degenerative disc space narrowing of the lumbar spine disability from 10 percent to 20 percent disabling, effective February 7, 2006. Subsequently, in a rating action in March 2007, the RO granted service connection for lumbar radiculopathy, left lower extremity, evaluated as 10 percent disabling, effective November 17, 2006. Finally, in an October 2016 rating decision, the RO granted service connection for lumbar radiculopathy of the right lower extremity and assigned an initial rating of 10 percent, effective September 21, 2015. The radiculopathy ratings are part and parcel to the spine evaluation and therefore are on appeal regardless of whether the Veteran specifically initiated an appeal of the ratings.

In February 2011, the Board remanded the case to the RO for further evidentiary development. Following the requested development, a supplemental statement of the case (SSOC) was issued in September 2012. 

In July 2014, the Board again remanded the case to the RO for further evidentiary development. Following the requested development, in October 2015, a Decision Review Officer's (DRO) decision increased the evaluation for degenerative disc space narrowing of the lumbar spine from 20 percent to 40 percent, effective September 21, 2015; the RO also increased the evaluation for lumbar radiculopathy, left lower extremity, from 10 percent to 20 percent, effective September 21, 2015. An SSOC was issued in October 2016. A claimant is presumed to be seeking the highest rating available under law. AB v. Brown, 6 Vet. App. 35, 38 (1993). Consequently, the matter of higher ratings for the Veteran's degenerative disc space narrowing and radiculopathy of the left lower extremity remains in appellate status. 

The Board notes that the Veteran's claims for higher ratings for left hip strain, patellofemoral syndrome of the left knee, and post-traumatic stress disorder (PTSD) have been certified to the Board. The Veteran, however, requested a hearing before the Board in her September 2015 VA Form 9, which has yet to be held. Thus, these issues are not before the Board at this time. Since these are the only two issues for which there is a pending request for a Board hearing, the Board can proceed to consider the rest of the Veteran's claims. 


FINDINGS OF FACT

1. Prior to September 21, 2015, the Veteran's degenerative disc space narrowing of the lumbar spine was manifested by some painful limitation of motion with stiffness and spasms in the paraspinous muscles; his remaining functional range of motion was better than 30 degrees of flexion; he did not have ankylosis or incapacitating episodes having a total duration of at least four weeks during any 12 month period. 

2. Beginning September 21, 2015, the Veteran's degenerative disc space narrowing of the lumbar spine has not been manifested by unfavorable ankylosis of the entire thoracolumbar spine or incapacitating episodes having a total duration of at least six weeks during any 12 month period. 

3. Prior to September 21, 2015, the Veteran's lumbar radiculopathy, left lower extremity resulted in no more than mild incomplete paralysis of the sciatic nerve. 

4. Since September 21, 2015, the Veteran's lumbar radiculopathy, left lower extremity has been productive of no more than moderate incomplete paralysis of the sciatic nerve. 

5. The Veteran's lumbar radiculopathy, right lower extremity has been productive of no more than mild incomplete paralysis of the sciatic nerve. 


CONCLUSIONS OF LAW

1. The criteria for a rating in excess of 20 percent for degenerative disc space narrowing of the lumbar spine, prior to September 21, 2015, have not been met. 38 U.S.C.A. §§ 1155, 5107 (West 2014); 38 C.F.R. §§ 3.102, 4.1, 4.2, 4.3, 4.7, 4.10, 4.21, 4.40, 4.45, 4.59, 4.71a, Diagnostic Code 5242 (2016). 

2. The criteria for a rating in excess of 40 percent for degenerative disc space narrowing of the lumbar spine, beginning on September 21, 2015, have not been met. 38 U.S.C.A. §§ 1155, 5107 (West 2014); 38 C.F.R. §§ 3.102, 4.1, 4.2, 4.3, 4.7, 4.10, 4.21, .4.40, 4.45, 4.59, 4.71a, Diagnostic Code5242 (2016). 

3. The criteria for an initial rating in excess of 10 percent for lumbar radiculopathy, left lower extremity, prior to September 21, 2015, have not been met. 38 U.S.C.A. §§ 1155, 5107 (West 2014); 38 C.F.R. §§ 3.102, 4.1, 4.3, 4.7, 4.124a, DC 8520 (2016). 

4. The criteria for a rating in excess of 20 percent for lumbar radiculopathy, left lower extremity, since September 21, 2015, have not been met. 38 U.S.C.A. §§ 1155, 5107 (West 2014); 38 C.F.R. §§ 3.102, 4.1, 4.40, 4.45, 4.7, 4.124a, Diagnostic Code 8520 (2016). 

5. The criteria for a rating in excess of 10 percent for lumbar radiculopathy, right lower extremity have not been met. 38 U.S.C.A. §§ 1155, 5107 (West 2014); 38 C.F.R. §§ 3.102, 4.1, 4.40, 4.45, 4.7, 4.124a, Diagnostic Code 8520 (2016). 


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

I. Duty to Notify and Assist.

With respect to the Veteran's claims herein, VA has met all statutory and regulatory notice and duty to assist provisions. See generally, 38 U.S.C.A. §§ 5103, 5103A (West 2014); 38 C.F.R. §§ 3.159, 3.326 (2016); see also Scott v. McDonald, 789 F.3d 1375 (Fed. Cir. 2015). 

The Veteran has been afforded VA examinations on the issues decided herein. McLendon v. Nicholson, 20 Vet. App. 79 (2006). The examinations were conducted by medical professionals who reviewed the medical records, solicited history from the Veteran, and provided information necessary to apply the pertinent rating criteria and to decide the issues addressed in this decision. Nieves-Rodriguez v. Peake, 22 Vet. App 295 (2008). 

To the extent that the spine examinations do not comply with 38 C.F.R. § 4.59, in providing for testing for pain of the spine joints on active and passive motion, in weight-bearing and nonweight-bearing, providing such examination for the period prior to September 21, 2015 is not possible at this point. As to the period after September 21, 2015, the spine disability could not be rated higher absent a finding of ankylosis or prescription of bed rest for a specific period of time; findings not affected by such testing. Cf. Correia v. McDonald, 28 Vet. App. 158 (2016). For these reasons, the Board finds that it may proceed to adjudicate the appeal based on the examinations of record. 

Under these circumstances, the Board finds that VA has complied with all duties to notify and assist required by 38 U.S.C.A. §§ 5103 (a), 5103A and 38 C.F.R. § 3.159. 


II. Laws and Regulations-Higher Evaluations.

Disability evaluations are determined by the application of a schedule of ratings which is based upon average impairment of earning capacity. 38 U.S.C.A. § 1155; 38 C.F.R. Part 4. 38 C.F.R. § 4.1 requires that each disability be viewed in relation to its history, and that there be emphasis upon the limitation of activity imposed by the disabling condition. 38 C.F.R. § 4.2 requires that medical reports be interpreted in light of the entire recorded history, and that each disability must be considered from the point of view of the veteran's working or seeking work. Separate diagnostic codes identify the various disabilities. 

Where there is a question as to which of two disability evaluations shall be applied, the higher evaluation is to be assigned if the disability picture more nearly approximates the criteria required for that rating. 38 C.F.R. § 4.7. Otherwise, the lower rating is to be assigned. Because the Veteran is appealing the original assignment of a disability rating following an award of service connection, the severity of her radiculopathy of the left lower extremity is to be considered during the entire period from the initial assignment of the rating to the present. See Fenderson v. West, 12 Vet. App. 119 (1999). In deciding this appeal, the Board has considered whether separate ratings for different periods of time, based on the facts found, are warranted, a practice of assigning ratings referred to as "staging the ratings." Id.

In determining the appropriate evaluation for musculoskeletal disabilities, particular attention is focused on functional loss of use of the affected part. Under 38 C.F.R. § 4.40, functional loss may be due to pain, supported by adequate pathology and evidenced by visible behavior on motion. Weakness is as important as limitation of motion, and a part that becomes painful on use must be regarded as seriously disabled. Under 38 C.F.R. § 4.45, factors of joint disability include increased or limited motion, weakness, fatigability, or painful movement, swelling, deformity or disuse atrophy. 

Under 38 C.F.R. § 4.59, painful motion is an important factor of joint disability and actually painful joints are entitled to at least the minimum compensable rating for the joint. 

Where functional loss is alleged due to pain upon motion, the provisions of 38 C.F.R. § 4.40 and § 4.45 must be considered. DeLuca v. Brown, 8 Vet. App. 202, 207-08 (1995). Within this context, a finding of functional loss due to pain must be supported by adequate pathology, and evidenced by the visible behavior of the claimant. Johnston v. Brown, 10 Vet. App. 80, 85 (1997). Pain itself does not rise to the level of functional loss as contemplated by § 4.40 and § 4.45, but may result in functional loss only if it limits the ability to perform the normal working movements of the body with normal excursion, strength, coordination or endurance. Mitchell v. Shinseki, 25 Vet. App. 32, 43 (2011). 

III. Factual background & Analysis-Degenerative disc space narrowing, lumbar spine.

By a rating action in December 2003, the RO granted service connection for degenerative disc space narrowing, lumbar spine; a 10 percent evaluation was assigned, effective September 28, 2003. 

In a statement in support of claim (VA Form 21-4138), received in February 2006, the Veteran requested an increased rating for her low back disorder. Submitted in support of the claim were VA progress notes and private treatment reports dated from April 2003 to September 2006 which show that the Veteran received clinical attention and treatment for chronic low back pain. The Veteran received physical therapy for her back pain. 

The Veteran was afforded a VA examination for evaluation of her low back condition in October 2006. At that time, she complained of pain in the lower back which radiated to the left hip; she also complained of tingling in the left knee. The examiner noted that the Veteran brought with her an MRI of the lumbar spine performed in the private sector in September 2006, which showed spondylolisthesis grade 1 at the lumbosacral level. The examiner noted that the Veteran had degenerative intervertebral disk disease at the L3-4, L4-5 and L5-S1 levels with small central disk herniations at the L4-5 and L5-S1 levels. It was noted that the Veteran did not use any assistive devices but she did have significant limitations on walking; she was only able to walk less than a city block and she noted that she experienced immediate leg pain with walking. The Veteran indicated that she had difficulty lifting, pushing, and pulling - particularly when she has to bend over to manage her children. She also noted that standing causes back pain. She had difficulty with kneeling, squatting, and stooping, and sitting and traveling in the car caused back pain. She also reported difficulty with her personal hygiene, including putting on her shoes and socks; she noted that bending at the waist caused back pain. The Veteran reported having significant flare ups of her back pain on a weekly basis. She reported having had one severe episode of back pain over the past year; she noted that the episode lasted six days. She denied any bowel or bladder dysfunction. 

On examination, it was noted that the Veteran appeared in no acute distress; she ambulated with a slight limp on the left leg. On examination of the thoracolumbar spine there were no gross deformities of the thoracolumbar spine. The Veteran had rather marked tenderness on palpation of the lower lumbar paravertebral musculature bilaterally and exquisite tenderness over the left sacroiliac area. Range of motion of the thoracolumbar spine revealed flexion to 40 degrees, extension to 10 degrees, lateral bending was 20 degrees to each side, and rotation was 30 degrees to each side. The examiner noted that the Veteran moved through the ranges of motion with little discomfort; however, she experienced discomfort at the extremes of motion. The examiner stated that the Veteran's lumbar spine joint range of motion and strength was diminished due to a complaint of pain on attempt at repetitive motion testing the extent and degree of which was not possible to determine due to the extreme subjectivity of the exercise. The pertinent diagnosis was isthmic spondylolisthesis grade 1 at the lumbosacral level with degenerative intervertebral disk disease at L4-5 L3-4 and L5-S1 levels with left L5 radicular irritation. 

Subsequently submitted in support of the Veteran's claim were VA as well as Private treatment reports dated from September 2006 to January 2007 reflecting ongoing treatment for chronic low back pain. Among the records is the report of an MRI of the lumbar spine, dated in September 2006, which revealed bilateral L5 spondylolysis, Grade I, L5-S1 spondylolisthesis, degenerative disc disease at L3-4, L4-5, L5-S1 with central small subligamentous disc herniations at L4-5 and at L5-S1 which do not deform the thecal sac; otherwise, negative. The Veteran was seen June 2008 for acute exacerbation of chronic low back pain. Examination of the back revealed decreased range of motion in the lumbar spine. There was paraspinal spasm noted and tenderness over the bilateral sacroiliac joints. Straight leg raises were negative. There was no increased pain with superimposed dorsiflexion. The Veteran was able to walk on her toes and heels. The diagnosis was acute exacerbation of low back pain. 

The Veteran was afforded a VA examination of the spine in July 2011. At that time, the Veteran reported that she had limitations in daily activity with sitting and standing, and lifting. She stated that too much activity will cause low back pain and that she had low back pain on arising. She denied any fatigue, decreased motion, stiffness, weakness, spasm. She stated that the pain is constant; described the severity as mild to moderate with certain activities. She stated that she had a low back brace which she only used maybe once a month. On examination, it was noted that the Veteran's posture and gait were normal. There was no kyphosis, lumbar lordosis, or scoliosis noted. No ankylosis was noted. There was no spasm, atrophy, guarding, weakness or pain with motion. Tenderness was noted on the right. Active motion flexion to 45 degrees and extension was to 20 degrees. Lateral flexion was to 20 degrees, and rotation was to 30 degrees. There was no objective evidence of pain on active range of motion. There was no objective evidence of pain following repetitive motion and no additional limitations after the three repetitions of range of motion. Motor examination was normal and no muscle atrophy was noted. The pertinent diagnoses were spondylolisthesis L5 on S1, and degenerative disc disease. There were no findings of neurologic abnormality of the right lower extremity.

On the occasion of a VA examination in September 2015, the Veteran reported continuous pain in her back and only one or two hours of sleep. The Veteran indicated that she experiences flare-ups with activities, like when she's doing the dishes. She indicated that she was unable to sit or stand for any prolonged period, could no longer bowl or do yoga, could not walk for any long periods, and was unable to be in a vehicle for long drive without lumbar support. She described the intensity of the pain as 8 out of 10. The Veteran reported that flare-ups are manifested by a burning and crushing sensation. She noted that flare-ups cause a limited range of motion, decreased endurance, weakness and incoordination. The Veteran indicated that prolonged sitting and standing caused more of pressure, and she reported described the feeling as crushing or burning. The Veteran reported having more tingling down the legs with sitting. 

Examination of the lumbar spine revealed a forward flexion to 40 degrees, extension to 20 degrees, lateral flexion to 20 degrees bilaterally; right lateral rotation to 25 degrees, and left lateral rotation to 20 degrees. Pain was noted on the examination and reportedly caused functional loss. The examiner noted that the Veteran had pain with all tested motion. The examiner noted that the Veteran had additional range of motion after three repetitions; functional loss was caused by pain, fatigue, lack of endurance and incoordination. After three repetitions, forward flexion was to 20 degrees, extension was to 20 degrees, lateral flexion was to 20 degrees, and lateral rotation was to 20 degrees. The examiner noted that the only thing repetitive the Veteran does is walking and she can only walk for a period of time and has to rest. She had pain, weakness, fatigue, decrease range of motion, endurance and incoordination. The examiner noted that the Veteran has IVDS of the lumbar spine; however, he stated that the Veteran had not had any episodes of acute signs and symptoms of IVDS that required bed rest prescribed by a physician and treatment by a physician in the past 12 months. The Veteran was not using any assistive devices. The pertinent diagnoses were degenerative arthritis of the spine and intervertebral disc syndrome. The examiner noted that the Veteran's gait was normal, and she was able to get on and off the table with no assistance; she was also able to sit upright in chair and take shoes on and off and remove her pants without assistance. The report indicates that the Veteran did not have radiculopathy of the right lower extremity. 

The Veteran's service-connected lumbar spine disability has been rated under 38 C.F.R. § 4.71a, DC 5242 (2016), for degenerative arthritis of the spine. The Board notes that, in order to afford the Veteran the highest possible disability rating, the Board will consider all potentially applicable diagnostic codes, including those that evaluate degenerative arthritis. 

Degenerative arthritis is to be evaluated based on the limitation of motion of the joint. Limitation of motion must be objectively confirmed by findings such as swelling, muscle spasm, or satisfactory evidence of painful motion. If the joint is affected by limitation of motion but the limitation of motion is non-compensable under the appropriate diagnostic code, a 10 percent rating applies for each such major joint or group of minor joints affected by limitation of motion. In the absence of limitation of motion, a 10 percent rating applies for x-ray evidence of involvement of two or more major joints or two or more minor joint groups. A 20 percent rating applies for x-ray evidence of involvement of two or more major joints or two or more minor joint groups, with occasional incapacitating exacerbations. 38 C.F.R. § 4.71a, Diagnostic Code 5003, 5010 (2016). 

Under the General Rating Formula for Diseases and Injuries of the Spine, thoracolumbar spine disabilities are to be evaluated under Diagnostic Codes 5235 to 5243 as follows: 

Unfavorable ankylosis of the entire thoracolumbar 
spine ..................................................50 

Forward flexion of the thoracolumbar spine 30 degrees or less; or, favorable ankylosis of the entire thoracolumbar spine.........................................40 

Forward flexion of the thoracolumbar spine greater than 30 degrees but not greater than 60 degrees; or, or, the combined range of motion of the thoracolumbar spine not greater than 120 degrees; or, muscle spasm or guarding severe enough to result in an abnormal gait or abnormal spinal contour such as scoliosis, reversed lordosis, or abnormal kyphosis..........................20 

Forward flexion of the thoracolumbar spine greater than 60 degrees but not greater than 85 degrees; or, forward flexion of the cervical spine greater than 30 degrees but not greater than 40 degrees; or, combined range of motion of the thoracolumbar spine greater than 120 degrees but not greater than 235 degrees; or, muscle spasm, guarding, or localized tenderness not resulting in abnormal gait or abnormal spinal contour; or, vertebral body fracture with loss of 50 percent or more of the height...............................................................10 

Note (1): Evaluate any associated objective neurologic abnormalities, including, but not limited to, bowel or bladder impairment, separately, under an appropriate diagnostic code. 

Note (2): (See also Plate V.) For VA compensation purposes, normal forward flexion of the thoracolumbar spine is zero to 90 degrees, extension is zero to 30 degrees, left and right lateral flexion are zero to 30 degrees, and left and right lateral rotation are zero to 30 degrees. The combined range of motion refers to the sum of the range of forward flexion, extension, left and right lateral flexion, and left and right rotation. The normal combined range of motion of the thoracolumbar spine is 240 degrees. The normal ranges of motion for each component of spinal motion provided in this note are the maximum that can be used for calculation of the combined range of motion. 

Note (3): In exceptional cases, an examiner may state that because of age, body habitus, neurologic disease, or other factors not the result of disease or injury of the spine, the range of motion of the spine in a particular individual should be considered normal for that individual, even though it does not conform to the normal range of motion stated in Note (2). Provided that the examiner supplies an explanation, the examiner's assessment that the range of motion is normal for that individual will be accepted. 

Note (4): Round each range of motion measurement to the nearest five degrees. 

Note (5): For VA compensation purposes, unfavorable ankylosis is a condition in which the entire cervical spine, the entire thoracolumbar spine, or the entire spine is fixed in flexion or extension, and the ankylosis results in one or more of the following: difficulty walking because of a limited line of vision; restricted opening of the mouth and chewing; breathing limited to diaphragmatic respiration; gastrointestinal symptoms due to pressure of the costal margin on the abdomen; dyspnea or dysphagia; atlantoaxial or cervical subluxation or dislocation; or neurologic symptoms due to nerve root stretching. Fixation of a spinal segment in neutral position (zero degrees) always represents favorable ankylosis. 

Note (6): Separately evaluate disability of the thoracolumbar and cervical spine segments, except when there is unfavorable ankylosis of both segments, which will be rated as a single disability. 

38 C.F.R. § 4.71a, Diagnostic Codes 5235-5243 (2016). 

Alternatively, the Formula for Rating IVDS Based on Incapacitating Episodes provides a 10 percent disability rating for incapacitating episodes having a total duration of at least one week but less than 2 weeks during the past 12 months; a 20 percent disability rating for incapacitating episodes having a total duration of at least 2 weeks but less than 4 weeks during the past 12 months; a 40 percent disability rating for incapacitating episodes having a total duration of at least 4 weeks but less than 6 weeks during the past 12 months; and a 60 percent disability rating for IVDS with incapacitating episodes having a total duration of at least 6 weeks during the past 12 months. 38 C.F.R. § 4.71a. An incapacitating episode is a period of acute signs and symptoms due to IVDS that requires bed rest prescribed by a physician and treatment by a physician. Id. 

(i). A rating in excess of 20 percent prior to September 21, 2015. 

The Veteran has been assigned a 20 percent evaluation for his back disability prior to September 21, 2015. This evaluation contemplates forward flexion greater than 30 degrees or a combined range of motion not greater than 120 degrees. In order to warrant a higher evaluation, there must be the functional equivalent of limitation of flexion to 30 degrees or less due to such factors as limitation of motion, pain on motion, weakness, or excess fatigability. See DeLuca, supra. 

Based on a review of the record, the Board finds that the evidence does not demonstrate the criteria necessary for an evaluation in excess of 20 percent for the Veteran's degenerative disc space narrowing of the lumbar spine during the period prior to September 21, 2015. Specifically, the Veteran has never demonstrated flexion of his thoracolumbar spine limited to 30 degrees or less. At most, upon VA examination in October 2006, the Veteran's forward flexion was shown to be limited to 40 degrees. Even considering the effects of pain on use, the Veteran's forward flexion was not shown to be functionally limited to 30 degrees. The examiner stated that the Veteran moved through range of motion with little discomfort. See DeLuca, supra. In March 2008, the Veteran's forward flexion was reported to be 45 degrees. And, the examiner noted that, after repetitive motion activity of the spine, testing for pain, weakness, and fatigability showed no change in range of motion or pain pattern that have described prior to activity. On examination in July 2011, the Veteran's forward flexion was shown to be limited to 45 degrees. Again, even considering the effects of pain on use, the Veteran's forward flexion was not shown to be functionally limited to 30 degrees. In fact, the examiner noted that no objective evidence of pain on active range of motion. As such, the evidence of record clearly demonstrates that the Veteran is not entitled to a higher disability rating of 20 percent based on limitation of motion. 

The Board has considered the lay and medical evidence. However, the Veteran does not describe the functional equivalent of limitation of flexion to 30 degrees or less. In addition, there is no evidence that he was diagnosed with ankylosis of the thoracolumbar spine or complained of an inability to move his spine during the period prior to September 21, 2015. Therefore, an increase to a 40 percent disability rating is not warranted under the General Rating Formula for Diseases and Injuries of the Spine. 

With regard to intervertebral disc syndrome, the evidence must demonstrate incapacitating episodes lasting a total duration of at least four weeks during the past twelve months to warrant an increased rating. On examination in October 2006, the Veteran reported having significant flare ups of her back pain on a weekly basis; she reported having had one severe episode of back pain over the past year, which lasted six days. However, there is no indication that the Veteran has been prescribed bed rest by a doctor. During the July 2011 VA examination, the Veteran specifically denied having had any incapacitating episodes of spine disease. As such, there is no competent and probative evidence of record showing the Veteran had incapacitating episodes during the period in question, with bed rest that was prescribed by a physician. Therefore, the Board finds that these rating criteria will not provide the Veteran with a rating in excess of 20 percent for degenerative disc space narrowing of the lumbar spine prior to September 21, 2016. Thus, a rating in excess of 20 percent is not available for incapacitating episodes. See 38 C.F.R. § 4.71a (2016). 

All evidence from this period shows that the Veteran did not have radiculopathy of the right lower extremity.

Based on the foregoing, the Board concludes that the Veteran's degenerative disc space narrowing of the lumbar spine has been no more than 20 percent disabling prior to September 21, 2015. In light of the objective clinical findings, the Board finds that a schedular rating in excess of 20 percent is not warranted as there is no probative evidence of forward flexion less than 30 degrees, or favorable ankylosis prior to September 21, 2015. As the preponderance of the evidence is against the claim, there is no benefit of the doubt to be resolved in the Veteran's favor. 38 U.S.C.A. § 5107 (b), 38 C.F.R. §§ 3.102, 4.3. 

(ii). A Rating in excess of 40 percent from September 21, 2015. 

As noted above, the veteran may receive a 60 percent disability rating by showing that he suffered incapacitating episodes having a total duration of at least six weeks during the past twelve months. The Veteran has not reported any such problem; in fact, during the recent VA examination in September 2015, it was noted that the Veteran had not had any incapacitating episodes over the past 12 months. The VA medical examinations of record and private medical records do not reflect the incapacitating episodes having a total duration of at least 6 weeks during the past 12 months. At no time has bed rest been prescribed. Thus, a 60 percent disability rating is not warranted under the formula for rating intervertebral disc syndrome based on incapacitating episodes. 

Under the general rating formula for diseases of the spine, a disability rating in excess of 40 percent is also not warranted. Specifically, a 40 percent disability is currently assigned to the Veteran's lumbar spine disability as the objective medical evidence reflects that forward flexion of the thoracolumbar spine is 30 degrees or less. Upon review of the objective findings of record, however, there has never been any finding of unfavorable ankylosis of the entire thoracolumbar spine. Thus, a 50 percent disability rating is not warranted for the Veteran's lumbar spine disability. 

The Board has also considered 38 C.F.R. §§ 4. 40, 4.45 (2016), addressing the impact of functional loss, weakened movement, excess fatigability, incoordination, and pain, throughout the time period. See also Deluca v. Brown, 8 Vet. App. 202, 206 (1995). In this regard, on examination in September 2015, the examiner noted that the Veteran had additional range of motion after three repetitions; functional loss was caused by pain, fatigue, lack of endurance and incoordination. After three repetitions, forward flexion was to 20 degrees, extension was to 20 degrees, lateral flexion was to 20 degrees, and lateral rotation was to 20 degrees. The examiner noted that the Veteran had pain, weakness, fatigue, decrease range of motion, endurance and incoordination. Consequently, flexion is functionally limited to 20 degrees. 38 C.F.R. §§ 4. 40, 4.45; see also Deluca, Id. It is not disputed that the Veteran has pain on motion, but the Board finds that the currently assigned 40 percent disability rating adequately compensates her for her pain and functional loss of motion in this case. 

With regard to neurologic abnormalities, separate ratings have been assigned for the neurologic manifestations associated with the spine disability and are discussed below. The most probative evidence of record shows that her spine disability did not result in right lower extremity neurologic abnormality. 

Again, the Board accepts that the veteran has functional impairment, pain, and pain on motion. The Board also finds the Veteran's own reports of symptomatology to be credible. However, neither the lay nor medical evidence establishes the presence of unfavorable ankylosis. 

In summary, for the reasons and bases expressed above, the Board finds that the criteria is not met for the assignment of a schedular rating in excess of 40 percent rating for degenerative disc space narrowing of the lumbar spine from September 21, 2015. 38 U.S.C.A. § 5107 (b); 38 C.F.R. §§ 3.102; 4.3. 

IV. Factual background & Analysis-lumbar radiculopathy, left lower extremity.

The Veteran essentially contends that her left lower extremity condition is more severe than reflected by the ratings currently assigned; therefore, a higher rating is warranted. 

The Veteran's lumbar radiculopathy, left lower extremity is currently rated under Diagnostic Code 8520 which provides ratings for paralysis of the sciatic nerve. Diagnostic Code 8520 provides that mild incomplete paralysis is rated 10 percent disabling; moderate incomplete paralysis is rated 20 percent disabling; moderately severe incomplete paralysis is rated 40 percent disabling; and severe incomplete paralysis, with marked muscular atrophy, is rated 60 percent disabling. Complete paralysis of the sciatic nerve, the foot dangles and drops, no active movement possible of muscles below the knee, flexion of knee weakened or (very rarely) lost, is rated 80 percent disabling. 38 C.F.R. § 4.124a, Diagnostic Code 8520 (2016). 

The term "incomplete paralysis" with this and other peripheral nerve injuries indicates a degree of lost or impaired function substantially less than the type pictured for complete paralysis given with each nerve, whether due to varied level of the nerve lesion or to partial regeneration. When the involvement is wholly sensory, the rating should be for the mild, or at most, the moderate degree. The ratings for the peripheral nerves are for unilateral involvement; when there is bilateral involvement, the VA adjudicator is to combine the ratings for the peripheral nerves, with application of the bilateral factor. 38 C.F.R. § 4.124a. 

The Board notes that words such as "slight," "moderate," and "severe" are not defined in the Rating Schedule. Rather than applying a mechanical formula, the Board must evaluate all of the evidence to the end that its decisions are "equitable and just." 38 C.F.R. § 4.6. Use of terminology such as "severe" by VA examiners and others, although evidence to be considered by the Board, is not dispositive of an issue. 38 C.F.R. §§ 4.2, 4.6 (2016). 

On examination of the lumbar spine in October 2006, the examiner noted that the Veteran had a spotty hypoalgesia of the left lower extremity which did not follow a dermatomal or neural pattern. Motor strength of the left leg showed the extensor hallucis longus strength is at most 4 out of 5. Her deep tendon reflexes of the lower extremities were present and symmetrical bilaterally at plus 1. She tandem toe and heel walked with difficulty. After several steps with tandem heel walking, the left ankle dorsiflexion showed obvious weakness as compared to the right. 

In a statement in support of claim (VA Form 21-4138), dated in November 2006, the Veteran claimed service connection for radiculopathy of the left leg, secondary to her degenerative disc space narrowing of the lumbar spine. Submitted in support of the claim were private treatment reports dated from September 2006 to January 2007. In December 2006, the Veteran was seen for evaluation of low back pain that radiates to the left lower extremity. The Veteran reported that the back pain had worsened in the past year; she also reported having a tingling sensation in the left leg that radiates to the top of the left foot that is present just about all the time. When seen in January 2007, the Veteran's physician noted that she was sent for nerve conduction studies, which revealed an old L5 radiculopathy, secondary to her spondylolisthesis. 

The Veteran was afforded a VA peripheral examination in March 2008. At that time, it was noted that the Veteran had had weakness on dorsiflexion on the left side; and, a VA examination in October 2006 reported a diagnosis of spondylolisthesis grade 1 at the lumbosacral level with degenerative intervertebral disk disease at L4-5 L3-4 and L5-S1 levels with left L5 radicular irritation. She has also had an EMG that verified that she had a left L5 radiculopathy. The Veteran indicated that she currently had constant back pain, and she had a burning sensation with a radiation into her left lateral thigh and knee as well as some tingling into her foot on occasion. The Veteran also complained of left leg weakness and losing her footing. Patellar reflexes were 1 plus. No Achilles reflexes were elicited. She had equal muscle weakness with flexion and extension of the lower extremities. Slight decrease on weakness with dorsiflexion on the left great toe. The examiner noted that the Veteran had no sensory deficits although she reported that she had had tingling in the toes on her left foot previously in the day. She had normal muscle tone. The pertinent diagnosis included left L5 radiculopathy. 

A peripheral nerves examination was conducted in July 2011. At that time, the Veteran related that radiculopathy had been noted with activity in the left lateral leg. She reported frequency of symptoms about 4 times a week, and she indicated that the symptoms improved with the low back pain treatment. The Veteran reported having radiation of pain into the left leg; she described left leg sensations as it felt like creepy crawling outside of the leg and that the leg felt tired and heavy with walking. The Veteran denied any flare-ups of radiculopathy; she stated that it comes and goes, and no motor loss was reported. On examination, it was noted that deep tendon reflexes were 2 plus in both lower extremities with knee jerks, ankle jerk, and plantar flexion. Sensory examination was reported as normal. Motor examination was 5 out of 5 in the lower extremities. Muscle tone was reported to be normal. There was no atrophy and no gait abnormality. The diagnosis was left L5 radiculopathy. The medical findings included that there was no effect on muscle function. The Veteran reported having radiation of pain into the left leg; she described left leg sensations as it felt like creepy crawling outside of the leg and that the leg felt tired and heavy with walking. 

On examination in September 2015, the Veteran indicated that prolonged sitting and standing caused more of pressure, and she reported described the feeling as crushing or burning. The Veteran reported having more tingling down the legs with sitting. Muscle strength testing, was 4 out of 5 in the left hip flexion, left knee extension, as well as with ankle dorsiflexion and plantar flexion. No muscle atrophy was noted. Deep tendon reflexes 1 plus in the ankle. There was decreased sensation in the left thigh/knee, left lower leg/ankle, and toes. Straight leg raising was negative. Severe constant pain in the left lower extremity, severe intermittent pain in the left lower extremity, and moderate paresthesias and numbness. The Veteran reported numbness and tingling left leg into toes on a daily basis which she described as moderate. She stated that, if she walks for long period, the symptoms become more severe. The examiner noted that involvement of the sciatic nerve L4/L5/S1/S2/S3 sciatic nerve, mild on the right and moderate on the left. No ankylosis was noted in the spine. The pertinent diagnoses were degenerative arthritis of the spine and intervertebral disc syndrome. The examiner noted that the Veteran's gait was normal, and she was able to get on and off the table without assistance. The examiner noted that the disability does not allow the Veteran to sit for long periods so she cannot stand or sit for long periods and has concern for looking for desk job. 

A. Left leg radiculopathy rating in excess of 10 percent prior to September 21, 2015.

The Board finds no support for assignment of a 20 percent evaluation for the Veteran's lumbar radiculopathy of the left lower extremity. In so finding, the Board notes that, on the occasion of the March 2008 VA examination, the examiner reported only a slight decrease on weakness with dorsiflexion on the left great toe. The examiner noted that the Veteran had no sensory deficits although she reported that she had had tingling in the toes on her left foot previously in the day. Muscle tone was normal. Moreover, on examination in July 2011, deep tendon reflexes were 2+ with knee jerks, ankle jerk, and plantar flexion. Sensory examination was reported as normal. Motor examination was 5/5 in lower extremities. Muscle tone was reported to be normal. There was no atrophy and no gait abnormality. 

Considering the pertinent evidence in light of the above, the Board finds that the medical evidence reflects that, prior to September 21, 2015, the Veteran's radiculopathy in the left lower extremity has caused disability comparable to no more than mild incomplete paralysis of the sciatic nerve, manifested by complaints of numbness and tingling, but with no loss of muscle mass, strength, or function attributed to this service-connected disability. As noted, where, as here, the involvement is wholly sensory; the rating should be for the mild, or, at most, the moderate degree. Here, only sensory impairment was noted on the neurological evaluation, and the record does not otherwise provide a basis for more than a 10 percent rating. 

Despite the complaints and findings noted above, the overall disability picture is not found to be comparable to moderate incomplete paralysis of the sciatic nerve. Accordingly, there is no basis for a rating in excess of 10 percent for lumbar radiculopathy of the left lower extremity for the period prior to September 21, 2015. As the preponderance of the evidence is against the claim, the benefit of the doubt rule is not applicable. See 38 U.S.C.A. § 5107 (b); Gilbert v. Derwinski, 1 Vet. App. 49, 54-56 (1990). 

B. Left leg radiculopathy rating in excess of 20 percent after September 21, 2015.

After a careful review of the record, the Board finds that the Veteran's radiculopathy in the left lower extremity does not warrant an evaluation in excess of 20 percent. The Board has based its conclusions on the medical evidence outlined above, which shows symptoms productive of no more than moderate incomplete paralysis of the sciatic nerve in the left lower extremity, which includes findings of chronic severe pain, moderate numbness in the left lower extremity, with tingling down the left leg. On examination in September 2015, the examiner noted decreased sensation in the left thigh/knee, left lower leg/ankle, and toes. The examiner noted involvement of L4/L5/S1/S2/S3 sciatic nerve, moderate on the left. 

In light of the foregoing, the Board finds that the Veteran's symptoms of a neurological manifestation of the left lower extremity more nearly approximate the criteria for a 20 percent rating under Diagnostic Code 8520, for moderate incomplete paralysis. In the absence of findings which indicate that the neurological manifestation is productive of moderately severe incomplete paralysis, there is no schedular basis for an initial disability rating in excess of 20 percent. See 38 C.F.R. § 4.124a, Diagnostic Code 8520. All things considered, the record as a whole does not show persistent symptoms that equal or more nearly approximate the criteria for an evaluation in excess of 20 percent. 

In summary, for the reasons and bases expressed above, the Board concludes that an initial disability rating in excess of 20 percent for radiculopathy of the left lower extremity is not warranted beginning September 21, 2015. Since the preponderance of the evidence is against the claim, the benefit of the doubt rule does not apply. 38 C.F.R. § 4.3; Alemany v. Brown, 9 Vet. App. 518, 519 (1996). The benefit sought on appeal is accordingly denied. 

IV. Factual background & Analysis-lumbar radiculopathy, right lower extremity.

The Veteran's lumbar radiculopathy, right lower extremity is rated under the same criteria as the left lower extremity radiculopathy.

The evidence prior to the September 2015 examination report consistently shows that the Veteran had left leg radiculopathy but there is evidence showing right leg radiculopathy during that period. 

The first favorable evidence as to the right leg radiculopathy is found in the September 2015 examination report. The examination report documents 2 plus right ankle and knee reflexes, normal right leg sensory testing except for the right foot/ toes which was decreased. Strength was 5 out of 5 for the right lower extremity. Straight leg raising was negative on the right. The examiner indicated that the Veteran had mild radiculopathy on the right but did not have pain, paresthesias or dysesthesias, or numbness. 

These findings are consistent with mild incomplete paralysis of the right sciatic nerve. Neither these findings nor any other evidence of record show that the Veteran's right leg radiculopathy approximates moderate or greater incomplete paralysis of the sciatic nerve. Hence, a rating higher than 10 percent is not warranted. There is no reasonable doubt to be resolved as to this issue. See 38 U.S.C.A. § 5107(b); 38 C.F.R. § 3.102, 4.3. 

The Board has considered whether referral for an extraschedular rating under 38 C.F.R. § 3.321(b) (1) is warranted in this case. The Board finds that the Veteran's symptoms of degenerative disc space narrowing of the lumbar spine and radiculopathy of the left lower extremity are contemplated by the schedular rating criteria. Neither the facts of the case nor the Veteran's allegations raise the issue of extraschedular consideration. Thus, no analysis is required. See Yancy v. McDonald, 27 Vet. App. 484, 494 (2016) (holding that an extraschedular analysis is not warranted where it is not "specifically sought by the claimant nor reasonably raised by the facts found by the Board") (citing Dingess v. Nicholson, 19 Vet. App. 473, 499 (2006), aff'd, 226 Fed. Appx. 1004 (Fed. Cir. 2007). See also Doucette v. Shulkin, 28 Vet. App. 366, 369 (2017) (explaining that the Board had no obligation to analyze whether referral is warranted for extraschedular consideration if an extraschedular rating is not specifically sought by the claimant or reasonably raised by the facts found by the Board). 

Similarly, the Board recognizes that a claim for a total rating based on individual unemployability (TDIU) may be raised as a separate claim, or in the context of an initial rating or a claim for an increase. See Rice v. Shinseki, 22 Vet. App. 447, 452-53 (2009). While acknowledging the impact her lumbar spine disorder and associated radiculopathy on her employment, the record does not reflect that the Veteran is unable to obtain and/or maintain another form of employment as a result of her disabilities. Furthermore, the Veteran has not contended, and the evidence of record does not reflect, that she is unable obtain employment as a result of her disabilities. As such, the Board does not find that a claim for a TDIU has been reasonably raised by the record with regard to her low back and left lower extremity disabilities and thus the Board finds it unnecessary to consider entitlement at this juncture. 


ORDER

A rating in excess of 20 percent for degenerative disc space narrowing of the lumbar spine, prior to September 21, 2015, is denied. 

A rating in excess of 40 percent for degenerative disc space narrowing of the lumbar spine, effective from September 21, 2015, is denied. 

An initial rating in excess of 10 percent for lumbar radiculopathy, left lower extremity, prior to September 21, 2015, is denied. 

A rating in excess of 20 percent for lumbar radiculopathy, left lower extremity, from September 21, 2015, is denied. 

A rating in excess of 10 percent for lumbar radiculopathy, right lower extremity is denied. 


____________________________________________
JAMES G. REINHART
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs